Bradford A. Clements
CA Bar No. 310398
70 Rainey St. #1208
Austin, TX 78701
Bac2007@caa.columbia.edu
Telephone: 830-992-9202
Pro Se Attorney Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

No. 5:22-cv-07512

BRADFORD A. CLEMENTS

       Plaintiff,

v.

T-MOBILE US, INC. and T-MOBILE USA, Inc.

       Defendants.

### BRADFORD CLEMENTS'S PETITION TO COMPEL T-MOBILE TO SUBMIT TO ARBITRATION GOVERNED BY CALIFORNIA LAW IN SANTA CLARA COUNTY, CALIFORNIA IN ACCORD WITH THE PARTIES' WRITTEN ARBITRATION AGREEMENT, AND TO STAY THE PENDING TEXAS ARBITRATION

Bradford A. Clements ("Petitioner"), pursuant to Federal Arbitration Act 9 U.S.C. § 1 *et seq*., petitions the Court to compel arbitration of the disputes between him and T-Mobile US, Inc and T-Mobile USA, Inc. (collectively, "Respondent") in accordance with the express terms of the parties' written arbitration agreement and to stay the arbitration currently pending in Austin, Teas.

### NATURE OF PETITION

1.     Beginning in October 2019, Petitioner was Respondent's customer for wireless voice, messaging, and data services. During Petitioner's tenure as Respondent's customer, Respondent presided over at least six different data breaches. Bad actors stole Petitioner's personally identifiable information

("PII") from Respondent, causing Petitioner to suffer identity theft, credit-card fraud (via numerous unauthorized charges), and additional damages.

2.      Pursuant to the standard form adhesion contract that Respondent drafted, Respondent agreed that if it had a dispute with Petitioner or any U.S. customer: (a) any arbitration or court proceedings "***must***" occur in the county and state reflected in the customer's T-Mobile billing address, and (b) the arbitration or court proceedings would be governed by the law of the sate corresponding to the customer's T-Mobile billing address.  Petitioner filed a consumer arbitration claim against Respondent before the American Arbitration Association ("AAA") in September, with both parties originally wrongly assuming T-Mobile's records showed a Texas address. The next month and prior to an arbitrator's appointment, Petitioner discovered that Respondent's records definitively show a Santa Clara County, California address.  Accordingly, California law must apply to the present arbitration between Petitioner and Respondent, and the arbitration venue must be Santa Clara County, California.  However, Respondent has breached the written agreement by (a) never informing the AAA of the county and state of Petitioner's T-Mobile billing address; (b) insisting that Austin, Texas is the proper arbitration locale; and (c) not conceding that California law must apply to the matter.

3.      Under these circumstances, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq., Petitioner requests that this Court stay the pending Texas arbitration until the Court makes its final ruling, and enforce the parties' written agreement by compelling Respondent to take the following actions:  (a) admit to the AAA that Petitioner has a Santa Clara County, California address in T-Mobile's records; (b) concede to the AAA that the arbitration venue must be in Santa Clara County, California; and (c) concede to the AAA that California law must apply.

## PARTIES

4.      Petitioner is an individual who temporarily resides in Travis County, Texas.[1]  T-Mobile US, Inc. and its wholly-owned subsidiary T-Mobile USA, Inc. ("Respondent" or "T-Mobile") are a telecommunications company that provides wireless voice, messaging, and data services along with mobile phones and accessories. Respondent is headquartered in Bellevue, Washington and Overland Park, Kansas in the Kansas City Metropolitan area, and is incorporated under the laws of the State of Delaware.

---

[1] He is moving out of Texas in January 2023.

**JURISDICTION**

5.     Plaintiff is a Texas citizen (albeit temporarily).  Respondent is a citizen of Washington, Kansas, and Delaware.  The amount in controversy in the underlying arbitration matter through trial (accounting both for Petitioner's claims and Respondent's counterclaims) exceeds the sum value of $75,000, exclusive of interest and costs.  Therefore, this Court has original diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is perfect diversity of citizenship between the parties.  Additionally, pursuant to 28 U.S.C. § 1331, the underlying arbitration matter includes Petitioner's cause of action under the federal Stored Communications Act (18 U.S.C. § 2701).  *See Vaden v. Discover Bank*, 129 S. Ct. 1262, 1273-75 (2009) (federal court must "look through" a petition to compel arbitration to the parties' underlying, substantive dispute to assess jurisdiction).

6.     This Court has personal jurisdiction over Respondent because it is authorized to and regularly conducts business in the State of California.  Respondent sold, marketed, and advertised its products and services to Plaintiff when he was a resident of California (and Respondent continues to sell, market, and advertise its products and services in California).  Therefore, Respondent has sufficient minimum contacts to render the exercise of jurisdiction by this Court proper and necessary.  Moreover, Respondent solely drafted the mandatory forum-selection clause in the Terms and Conditions, the application of which requires disputes between the parties to be adjudicated in this District (San Jose serves Santa Clara County, California).

**DIVISIONAL ASSIGNMENT**

7.     Pursuant to Local Rule 3-2(c), this case should be assigned to the San Jose Division because a substantial part of the events or omissions giving rise to both the underlying arbitration claims and this Petition occurred in Santa Clara County, California.  Specifically, Petitioner entered into his contract with T-Mobile out of a T-Mobile store in Santa Clara County, California.  Four of T-Mobile's six data breaches during Petitioner's tenure as a T-Mobile customer occurred while Petitioner resided in Santa Clara County, California, including the enormous August 2021 data breach.  Lastly, application of the T&C Contract's mandatory forum-selection clause requires "arbitration or court proceedings" to be held in this Division, as San Jose sits in Santa Clara County, California.

**VENUE**

8.      Venue is proper because the Federal Arbitration Act ("FAA") applies to the Terms and Conditions and, under Section 4 of the FAA, a petition to compel arbitration should be brought in the district in which the arbitration is required to take place. *See Sterling Financial Inv. Group v. Hammer*, 393 F.3d 1223, 1225 (11th Cir. 2004); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) ("where the arbitration agreement contains a forum selection clause, only the district court in that forum can issue a § 4 order compelling arbitration."). Here, Respondent solely drafted the mandatory forum-selection clause in the Terms and Conditions, the application of which requires disputes between the parties to be adjudicated in this District (Santa Clara County, California). Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3). Respondent transacts business and may be found in this District. Petitioner contracted with Respondent out of a T-Mobile store in Santa Clara County, California.

**FACTUAL BACKGROUND**

**Respondent Is Bound by the Adhesive "Terms and Conditions" Contract It Drafted**.

9.      Respondent singularly drafted a standard-form adhesion Terms and Conditions ("T&C Contract") that applies to all its United States wireless customers, including Petitioner. **Ex. 1**.[2] The "Choice of Law" section[3] in the T&C Contract states:

> This Agreement is governed by the Federal Arbitration Act, applicable federal law, and the laws of the state or jurisdiction in which your billing address in our records is located, without regard to the conflicts of laws rules of that state or jurisdiction. Foreign laws do not apply. Arbitration or court proceedings must be in the county and state or jurisdiction in which your billing address in our records is located, but not outside the U.S.; or Puerto Rico.

Although the T&C Contract incorporates the AAA's Consumer Arbitration Rules,[4] the T&C Contract states that "these T&Cs will govern" in the event "those [AAA Consumer Arbitration Rules] conflict with our agreement in these T&Cs."[5]

---

[2] T-Mobile has used different versions of the Terms and Conditions throughout Petitioner's tenure as a customer, but they are not all available online. On information and belief, they have all contained the same "Choice of Law" section.
[3] P. 30.
[4] *Id.* at p. 5.
[5] *Id.*

**Arbitration Venue and Governing Law Are Dependent on a Customer's Address in Respondent's Records, and Petitioner Has Moved Several Times Since October 2019.**

10.     The critical factual inquiry for both venue and governing law under the T&C Contract is what address Respondent's records reflect for a given customer at the time of filing a consumer arbitration demand.

11.     Petitioner first contracted with Respondent out of a T-Mobile store in Santa Clara County, California in October 2019.  **Ex. 2**, p. 1.  From October 2019 through approximately October 2021, Petitioner lived in two different residences in Santa Clara County, California.  *Id*.  From approximately October 2021 through present, Petitioner has resided temporarily in Travis County, Texas.  *Id*.  Petitioner will move out of Texas in January 2023.  *Id*.  Upon each move, Petitioner endeavors to change his address with each service provider by going to each of their individual websites and updating his contact information.  *Id*.  Petitioner cannot remember specifically what occurred (and when) with any updates of his address on T-Mobile's website.  *Id*.

**Both Parties' First Actions with the AAA Wrongly Assumed Petitioner's Present, Temporary Texas Address Was Reflected in Respondent's Records.**

12.     By September 2021, Petitioner believed Respondent's records were updated by both parties to show Travis County, Texas as Petitioner's address.  *Id*.  On at least one occasion around the time of filing his demand form with the AAA, Petitioner tried to verify his address in T-Mobile's "Profile" section on the website, but that portion of the website was down.  *Id*.  Petitioner receives everything from T-Mobile electronically, pays a flat monthly fee for T-Mobile's services on automatic bill pay with a credit card on file, so he did not expect any physical address to appear on detailed historical phone records showing call and text history and data usage.  *Id*.

13.     On September 8, 2022, Petitioner ultimately assumed that his address in Respondent's records was in Travis County, Texas and listed it accordingly in his original AAA consumer demand claim form as the arbitration hearing location.  *Id*. at p. 1-2; **Ex. 3**.

14.     On September 21, 2022, the AAA initiated administration of the claim, provided a case number of 01-22-0003-8116, and stated in its letter of the same date, "If an in-person hearing is to be

held, the requested hearing locale is Austin, TX." **Ex. 4**, p. 1.  There was not yet any indication that the AAA had in fact selected Austin, Texas as the hearing locale.

15.    In the time period preceding Petitioner's realization of his former California address in Respondent's records (detailed below), Respondent's counsel sent several emails to Petitioner and the AAA, filed an answer and counterclaim, but never made any mention about Petitioner's address in Respondent's records. Ex. 2, p. 2.  Although the information was readily accessible to Respondent's counsel, it is unclear whether Respondent's counsel was aware or unaware of Petitioner's address in Respondent's records during this time period.  *Id*.  Accordingly, Petitioner will proceed under the assumption that Respondent was unaware and, like Petitioner, mistakenly assumed that its records showed Texas rather than Santa Clara County, California for Petitioner's address.  *Id*.

16.    On October 18, 2022, the AAA provided a list of five potential arbitrators, all of whom were based out of Texas with Texas law licenses.  **Ex. 5**.

**Prior to the Appointment of Any Arbitrator, Petitioner Discovered That His Address in Respondent's Records Was in Santa Clara County, California.**

17.    Over the weekend of October 29-30, 2022, Petitioner was analyzing the detailed historical call, text, and data records from his T-Mobile account as he prepared an analysis of the countless junk, phishing, and scam text messages he has received as a result of Respondent allowing his PII to be taken. Ex. 2, p. 2.  In that process, Petitioner discovered that his Santa Clara County, California address—specifically, the one he had at the time he first contracted with Respondent from the Santa Clara County, California T-Mobile store—appeared in Respondent's records.  *Id*.  In the September 2022 detailed records, for example, the Santa Clara County, California address appears in tiny print on just one line on page 2, and it appears on the last page backwards.  *Id.*; **Ex. 6**, pp. 2, 10.

18.    As soon as Petitioner made this discovery in the early morning hours of October 31, 2022, he notified Respondent and the AAA, attached the September 2022 detailed records and the T&C Contract, and asserted that Santa Clara County, California must be the arbitration venue and California law must apply.  **Ex. 7**.  Petitioner quickly updated his AAA demand form to request a Santa Clara County, California arbitration hearing and apply California law.  **Ex. 8**. Later in the day on October 31, 2022, Petitioner provided Respondent and the AAA a more detailed AAA demand form with the

applicable California statutory causes of action. **Exs. 9** & **10**. On November 2, 2022, Petitioner provided Respondent and the AAA a long-form, detailed complaint fleshing out Petitioner's California statutory causes of action. **Ex. 11**.

**Respondent Is in Clear Breach of the Venue and Governing Law Provisions of the T&C Contract, As It Presses the AAA Administrator to Select Texas As the Arbitration Hearing Venue.**

19. On November 7, 2022, Respondent vehemently objected to arbitration venue in Santa Clara County, California in an email spanning several long paragraphs. **Ex. 12**. Respondent never refuted the fact that its own records show Petitioner's address in Santa Clara County, California. *Id.* Respondent never referred to any language from the controlling "Choice of Law" section from the T&C Contract. *Id.* Respondent never explained why it had failed to notify Petitioner and the AAA of Petitioner's address in its records for the past six weeks. *Id.* Respondent also implied that Texas law should apply to the matter rather than California law. *Id.*

20. In two subsequent emails (with myriad cases cited in support) on November 7, 2022, Petitioner made clear to the AAA and Respondent that Respondent was asking the AAA to selectively not enforce key portions of the T&C Contract it drafted and that those provisions are mandatory. **Exs. 13** & **14**.

**Respondent Has Successfully Persuaded the AAA, As They Both Now Disregard the T&Cs Contract's Express Terms on Venue and Governing Law.**

21. On November 11, 2022, the AAA stated, "After review, the AAA has administratively decided that the case will proceed under TX law as initially filed and will only be changed upon a ruling from an appointed arbitrator." **Ex. 15**. Petitioner quickly objected to this decision, attaching the T&C Contract, and emphasizing the mandatory nature of the governing law and venue provisions. **Ex. 16**. On November 14, 2022, the AAA said it was clarifying its last email in that "the locale for this case will be in Texas. The issue of whether Texas or California law applies can be raised to the arbitrator upon appointment." **Ex. 17**. On November 17, Respondent wrote an email to the AAA and Petitioner in which it again failed to comply with the mandatory venue (Santa Clara County, California) and governing law (California) provisions of the T&C Contract. **Ex. 18**. Petitioner objected yet again. **Ex. 19**.

22.     On November 28, 2022, Petitioner provided a draft of this Petition to Respondent and asked Respondent if, in lieu of Petitioner filing this Petition in this Court, Respondent would enforce the terms of the T&C Contract by expressly declaring to the AAA that (a) Petitioner's address in Respondent's records is in Santa Clara County, California; (b) the proper arbitration venue for this matter is Santa Clara County, California; and (c) California law applies.  Respondent refused.  **Ex. 20**, p. 2.

23.     No arbitrator has been appointed as of the date this Petition is filed.

ARGUMENT

## I.     <u>Legal Authorities</u>

The FAA is clear that, as a general principle, no party should be forced to try claims under arbitration terms different than the party expressly agreed to in writing. *See, e.g., Monavie, LLC v. Quixtar, Inc.*, 741 F. Supp. 2d 1227, 1237 (D. Utah 2009) (the FAA "does not require parties to arbitrate when they have not agreed to do so") (citing *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).) The FAA grants district courts jurisdiction to enforce the terms of arbitration contracts. *See, e.g., AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648-49 (1986).  Section 4 of the FAA provides in pertinent part that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.
> * * *
> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4.

Section 4 permits a party to petition a court to compel a party to arbitrate on the agreed terms, including the location of the arbitration, when that party has failed to comply with the agreement. *See Sterling Fin. Inv. Group, Inc. v. Hammer*, 393 F.3d 1223, 1225 (11th Cir. 2004) (Section 4 provides authority for district court to enforce forum-selection clause in valid arbitration agreement that has been disregarded by opposing party and arbitrators); *KKW Enters. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 50 (1st Cir. 1999) (arbitration venue is "term" of parties' arbitration

agreement); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) (Section 4 extends to grievances that other party has failed to arbitrate under terms of agreement); *Snyder v. Smith*, 736 F.2d 409, 418 (7th Cir. 1984) (under FAA, court must order parties to arbitrate "in accordance with the terms of the agreement" and one such term of agreement is forum-selection clause), *cert. denied*, 469 U.S. 1037 (1984), *overruled on other grounds, Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *In re Cintas Corp. Overtime Pay Arbitration Litig*., 2007 U.S. Dist. LEXIS 5479, *6 (N.D. Cal. Apr. 10, 2007) (if written agreement contains place-of-arbitration clause, then party's attempt to arbitrate elsewhere is "refusal to arbitrate" under agreement); *ING Fin. Advisors, Inc. v. Nat'l Ass'n of Sec. Dealers*, 2005 Conn. Super. LEXIS 392, *8-9 (Conn. Super. Ct. 2005) ("The only reasonable reading of the clause in question is that the parties did not agree to arbitrate in any location other than Hartford; as it is a condition of arbitration, it is a matter to be decided by the court").

  The U.S. District Court for the District of Colorado provided a succinct example of this Section 4 forum-selection rationale and application in *GE Commer. Distrib. Fin. Corp. v. DonWin, LLC*:

> Therefore, it would seem that, just as a party cannot be forced to arbitrate absent an agreement to arbitrate, Plaintiff cannot be forced to arbitrate a dispute in a manner or in a location counter to what it had contractually agreed. Plaintiff instituted this action because of Defendant's alleged failure or refusal to arbitrate under the IFA's arbitration provision. Thus, pursuant to 9 U.S.C. § 4, Plaintiff duly petitioned this Court for an order directing that the underlying arbitration proceed in the manner set forth in the IFA.

2011 U.S. Dist. LEXIS 67951, *18 (D. Colo. June 24, 2011).

  Additionally, the enforcement of a forum-selection clause is a "gateway dispute," and under Section 4, Congress has given federal district courts "jurisdiction to enforce a forum-selection clause in a valid arbitration agreement that has been disregarded by the arbitrations." *Linsco/Private Ledger Corp. v. Maurice*, 2007 WL 869720, *7 (M.D. Tenn. 2007) (quoting *Hammer*, 393 F.3d at 1225).  Courts have consistently recognized the prima facie validity of forum-selection clauses and that these clauses must be enforced unless there are grounds for revocation of the agreement. *See Carnival Cruise Lines, Inc. v. Eulala Shute*, 499 U.S. 585, 593-95 (1991); *Scherk v. Alberto-Culver Co*., 417 U.S. 506, 519 & n. 14 (1974); *Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 12 (1972).

  The Eleventh Circuit upheld a party's right to enforce a forum-selection clause in an arbitration agreement under a fact pattern closely analogous to the instant case. *See Hammer*, 393 F.3d 1223. In

*Hammer*, a securities Registered Representative moved from Texas to Florida to accept a position with Sterling Financial Investment Group, Inc., and entered into an Representative Agreement which contained an arbitration agreement with a forum-selection clause requiring that any dispute between the parties be submitted to binding arbitration before the National Association of Securities Dealers ("NASD", the predecessor to FINRA) and arbitrated in Florida. *Id*. The Registered Representative was fired shortly after he commenced employment. He thereafter returned to Texas and, despite his agreement's requirement that the arbitration take place in Florida, he commenced arbitration proceedings against Sterling Financial in Houston, Texas. *Id*. Sterling Financial objected to the Texas venue and asked that NASD transfer venue to Florida as was required by the Representative Agreement, and the NASD denied Sterling's request and referred the motion to an arbitration panel in Houston, Texas. *Id*. Sterling filed a motion in the United States District Court for the Southern District of Florida to stay the Texas arbitration and compel arbitration in Florida, and the district court granted Sterling's motion.  On appeal, the Eleventh Circuit affirmed the district court's order compelling the Registered Representative to arbitrate in Florida in accordance with his Registered Representative Agreement. The Court rejected the Registered Representative's argument that under the NASD Code of Arbitration Procedure, the arbitrators should determine the time and place for meetings and that it was inappropriate for federal courts to micro-manage the vast array of issues which arise in arbitration proceedings. *Id*. at 1226. The Eleventh Circuit held that under the plain language of 9 U.S.C. § 4, the Court had jurisdiction to enforce a forum-selection clause in a valid arbitration agreement that has been disregarded by the opposing party and arbitrators. *Id*. at 1225.

In a Second Circuit case titled *Bear, Stearns & Co. v. Bennett*,  the defendant filed a demand for arbitration with the American Arbitration Association, seeking arbitration in Naples, Florida. 938 F.2d 31 (2nd Cir. 1991). The plaintiff then filed a motion in the Southern District of New York to compel arbitration in New York City in accordance with the parties' contract. *Id*.  Reversing the district court's dismissal of the plaintiff's petition, the Court of Appeals held:

> We reject Bennett's argument that the 'situs of suit' should be determined by the arbitrators or the AAA rather than by the district court. When there is a valid agreement for arbitration, Congress has directed the district courts to order that arbitration proceed 'in accordance with the terms of the agreement.' 9 U.S.C. § 4.

*Id.* at 32; *see also Societe Generale de Surveillance, S.A. v. Raytheon European Management and Systems Co.*, 643 F.2d 863, 868 (1st Cir. 1981) (district court had jurisdiction to enjoin arbitration in Massachusetts and compel arbitration in Switzerland, in accordance with the arbitration agreement).

This Court echoed—and then extended—the Eleventh Circuit and Second Circuit authorities in its opinion in *In re Cintas Corp. Overtime Pay Arbitration Litig.*, as follows:

> Bear Stearns and Sterling provide support for Cintas' position that Respondents' efforts to arbitrate in California constitute refusal to arbitrate within the meaning of section 4 of the FAA. Although Cintas does not identify any cases in which a party agreed to proceed with arbitration in a forum other than that designated in the contractual place-of-arbitration clause, but resisted arbitration in the contractually-specified forum, and the court squarely held that the party had "refused" to arbitrate within the meaning of section 4, this Court is persuaded that such conduct transgresses section 4.

2007 U.S. Dist. LEXIS 5479 at *41.

Lastly, the First Circuit Court has explained that the FAA's grant of power authorizes district courts to enjoin arbitration proceedings conducted contrary to the terms of an arbitration agreement:

> The Act expressly provides federal courts with the power to order parties to a dispute to proceed to arbitration where arbitration is called for by the contract. • . To allow a federal court to enjoin an arbitration proceeding which is not called for by the contract interferes with neither the letter nor the spirit of this law. Rather, to enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present.

*Societe Generale de Surveillance, S.A. v. Raytheon European Management and Systems Co.*, 643 F.2d 863, 868 (1st Cir. 1981).

## II.   Application

As in *GE Commer. Distrib. Fin. Corp.*, Petitioner "cannot be forced to arbitrate a dispute in a manner or in a location counter to what it had contractually agreed." *See GE Commer. Distrib. Fin. Corp.*, 2011 U.S. Dist. LEXIS 67951 at *18. It is indisputable that Petitioner's address in Respondent's records is in Santa Clara County, California. Consequently, due to the mandatory nature of the "Choice of Law" section in the T&C Contract, it is also indisputable that the T&C Contract requires the arbitration proceedings to be held in Santa Clara County, California and that California law applies to this matter. The T&C Contract does not leave any room for AAA administrative or arbitrator discretion. Identical to the scenario before the Ninth Circuit in *In re Cintas Corp. Overtime Pay Arbitration Litig.*, Respondent is "transgress[ing] section 4" by "resist[ing] arbitration in the contractually-specified forum" – Santa Clara

County, California.  *See In re Cintas Corp. Overtime Pay Arbitration Litig.*, 2007 U.S. Dist. LEXIS 5479 at *41.

Although the T&C Contract incorporates the AAA's Consumer Arbitration Rules,[6] the T&C Contract states that "these T&Cs will govern" in the event "those [AAA Consumer Arbitration Rules] conflict with our agreement in these T&Cs."[7]  Respondent and the AAA appear to be unnecessarily looking to the AAA Rules at all and then incorrectly applying them.  Rule 11 states:

> If an in-person hearing is to be held and if the parties do not agree to the locale where the hearing is to be held, the AAA initially will determine the locale of the arbitration. If a party does not agree with the AAA's decision, that party can ask the arbitrator, once appointed, to make a final determination. The locale determination will be made after considering the positions of the parties, the circumstances of the parties and the dispute, and the Consumer Due Process Protocol.

Respondent and the AAA first appear to totally ignore the "Choice of Law" section which would result in the irrelevance of Rule 11.  On top of that error, in applying Rule 11, they appear to be assuming that "the parties do not agree to the locale where the hearing is to be held" and then proceeding to the AAA administrator's discretion to decide.  But in this matter, ***the T&C Contract ("Choice of Law" section) itself is the pre-existing agreement on locale***, so the parties do in fact agree on locale.  Specifically, Respondent has already agreed with any wireless consumer that "[a]rbitration or court proceedings ***must*** be in the county and state or jurisdiction in which your billing address in our records is located."[8]  The T&C Contract is also the pre-existing agreement on governing law: "This Agreement is governed by […] the laws of the state or jurisdiction in which your billing address in our records is located…"

Unfortunately, Respondent's actions in (a) never admitting that Petitioner's address in Respondent's records is in Santa Clara County, California; (b) objecting to arbitration venue in Santa Clara County, California and insisting venue should be in Texas; and (c) implying that Texas law should apply all undercut or contradict the express terms of the T&C Contract and confuse the AAA administrator.  Undoubtedly, if Respondent were to admit that Petitioner's address in Respondent's records is in Santa Clara County, California and then assert that venue should be in Santa Clara County,

---

[6] Ex. 1, p. 5.
[7] *Id.*
[8] (emphasis added).

California and California law should apply, the AAA would then see complete "agreement" between the parties and administer the arbitration pursuant to that agreement.

As it currently stands, Respondent is working to force Petitioner to try claims under arbitration terms different than the parties expressly agreed to in the written T&C Contract. *See, e.g., Monavie, LLC*, 741 F. Supp. 2d at 1237. Under Section 4 of the FAA and *Hammer*, *Bennett*, *Societe Generale*, *KKW Enters.*, *Lauer*, *Snyder*, *ING Fin. Advisors, Inc.*, and, most importantly in the Ninth Circuit, *In re Cintas*, this Court should find that Respondent has failed to comply with the T&C Contract in objecting to venue in Santa Clara County, California and implying that Texas law, rather than California law, should apply. Then this Court should compel Respondent to arbitrate on the agreed venue and governing-law terms of the T&C Contract. See *Hammer*, 393 F.3d at 1225; *Bennett*, 938 F.2d at 31; *Societe Generale de Surveillance, S.A.*, 643 F.2d at 868; *KKW Enters.*, 184 F.3d at 50; *Lauer*, 49 F.3d at 327; *Snyder*, 736 F.2d at 418; *In re Cintas Corp. Overtime Pay Arbitration Litig.*, 2007 U.S. Dist. LEXIS 5479 at *6; *ING Fin. Advisors, Inc.*, 2005 Conn. Super. LEXIS 392 at *8-9. Based on the application of these authorities to the mandatory "Choice of Law" section of the T&C Contract, the Court should order Respondent to (a) admit to the AAA that Petitioner's address in Respondent's records is in Santa Clara County, California; (b) assert to the AAA that venue should be in Santa Clara County, California; and (c) assert to the AAA that California law should apply. Finally, pursuant to *Societe Generale*, this Court should enjoin all AAA arbitration proceedings conducted contrary to the terms of the T&C Contract – namely, any arbitration that involves any of the following: hearings conducted in Texas; Texas-licensed arbitrators rather than California-licensed arbitrators; and applying Texas law rather than California law. *See Societe Generale de Surveillance, S.A.*, 643 F.2d at 868.

Ultimately, no arbitrator has yet been selected or appointed; there is still time to get this right by following the mandatory contractual terms; and little, if any, harm will arise as a result. A proceeding brought contrary to an arbitration provision's forum-selection clause "violates important policies favoring arbitration and the enforcement of forum selection clauses." *Suchocloleski Assoc., Inc. v. Carden Fin. Corp.*, 2006 WL 3327625, at *2 (S.D.N.Y. Nov. 16, 2006) (internal citations omitted). Similarly, "The Supreme Court has recognized that through the FAA, Congress has 'declared a national policy favoring arbitration. . .'" *Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 932 (6th Cir. 1998) (quoting

*Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). The central policy of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 53-54, (1995) (emphasis added). Respondent appears inclined to selectively disavow some provisions of the T&C Contract (venue and governing law) and rigorously enforce Petitioner's perfect compliance with others (e.g., class-action ban). Respondent's attempted circumvention of the T&C Contract's mandatory forum-selection provision completely ignores the clear and unambiguous terms of the parties' written arbitration agreement and the national policy favoring enforcement of arbitration agreements according to their terms.

Holding hearings for this arbitration proceeding in Texas and under Texas law is also wholly counter to the public interest. Four of Respondent's six data breaches during Petitioner's tenure as a customer occurred while Petitioner resided in Santa Clara County, California, including the enormous August 2021 data breach. Petitioner entered into the wireless and data contract with Respondent out of Respondent's Santa Clara County, California physical store. Comparably, Texas has a minimal relation to this matter, and Petitioner has only temporarily resided in Texas as he will be leaving the state in January 2023. Finally, Respondent continually disregards the express language of the T&C Contract it drafted to argue that some type of qualitative balancing test  hinging almost entirely on reliance issues should be employed to determine venue and governing law. However, Respondent had ***better and easier*** access to Petitioner's address in Respondent's records than Petitioner. While Petitioner had never litigated over or even looked at the T&C Contract until autumn 2022, Respondent is deeply familiar with the same T&C Contract it uses for all its customers and frequently litigates over. Lastly, regarding reliance, Respondent's law firm boasts over 800 attorneys, and they have more California offices (three – including one in Santa Clara County) than Texas offices (two). Respondent's Texas counsel can easily comply with the "Choice of Law" section of the T&C Contract by teaming up with a California attorney from the same firm to handle this arbitration in Santa Clara County, California under California law.

## PRAYER FOR RELIEF

The venue and governing law for the arbitration proceedings are not discretionary procedural issues to be determined down the road by arbitrator, but express provisions of the T&C Contract that must be enforced expediently as written by this Court – especially when no arbitrator has yet been appointed.

Petitioner respectfully requests that this Court enter an order pursuant to 9 U.S.C. § 4 compelling Respondent to act in accordance with the parties' T&C Contract in the following ways: (a) admit to the AAA that Petitioner's address in Respondent's records is in Santa Clara County, California; (b) assert to the AAA that the arbitration venue for this matter should be in Santa Clara County, California; and (c) assert to the AAA that California law should apply to this matter.  Petitioner also requests that the Court stay any further arbitration proceedings in Texas or applying Texas law.  Petitioner additionally requests such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/Bradford Clements_____
By:
Bradford Clements, Esq.
CA Bar No. 310398
70 Rainey St. #1208
Austin, TX 78701
830-992-9202
Bac2007@caa.columbia.edu
*Pro Se Attorney Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2022, I emailed the filed version of this Petition along with the Judge's Standing Orders, the ECF Registration Info Handout, the AO398, AO399, and the appropriate notice regarding the Magistrate Judge to counsel of record (from the arbitration matter) below.  I also filed the Petition on the Court's NextGen CM/ECF filing system.

Jared M. Slade
ALSTON & BIRD
2200 Ross Avenue, Ste. 2300
Dallas, TX 75201
Telephone: (214) 922-3424
Jared.Slade@alston.com

*Attorney for Respondent T-Mobile US, Inc. and T-Mobile USA, Inc.*

## CERTIFICATE OF CONFERENCE

While I do not believe conference is required for this Petition to Compel Arbitration, I provided a draft version to opposing counsel on November 28, 2022, and we discussed this Petition (as detailed herein and shown in Exhibit 20) before I filed it.

/s/Bradford Clements_____
By:
Bradford Clements, Esq.