UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRADFORD ARTHUR CLEMENTS,<br><br>Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC, et al.,<br><br>Defendants. | Case No.  5:22-cv-07512-EJD<br><br>**AMENDED ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DISMISS**<br><br>Re: Dkt. No. 37 |

Plaintiff, Branford Clements ("Clements"), filed this data breach action against Defendant, T-Mobile USA, Inc., et al. ("T-Mobile"), alleging claims arising under various California consumer protection and privacy statutes, common law torts, and the Stored Communications Act ("SCA"). First Am. Compl. ("FAC"), ECF No. 35. Before the Court is T-Mobile's unopposed motion to compel arbitration and dismiss. Def.'s Mot. to Compel Arbitration and to Dismiss ("Mot."), ECF No. 37.

Having carefully reviewed the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the Court **GRANTS** T-Mobile's motion to compel arbitration and dismiss.

## I.    BACKGROUND

While he was a T-Mobile customer, Clements alleges that his data was stolen during multiple cyberattacks, causing him to suffer identify theft and unauthorized purchases on his credit card. *See, e.g.,* FAC ¶ 10. As a result, pursuant to an arbitration provision in T-Mobile's Terms and Services ("Arbitration Agreement"), Clements filed a consumer arbitration claim in Texas with the American Arbitration Association ("AAA"). Mot. 12. According to the most recent

1    update from the Parties, no arbitrator has been appointed in the Texas arbitration, and the

2    arbitration has been held in abeyance.  Order Granting Mot. for Leave to File Am. Compl. 3, ECF

3    No. 34.

4        Clements originally filed this action on November 30, 2022, as a petition to enforce his

5    arbitration clause with T-Mobile and compel a change of venue for his arbitration case from Texas

6    to California.  *See* Pl.'s Petition to Compel Arbitration ("Pet."), ECF No. 1.   T-Mobile filed a

7    motion to dismiss the original petition on February 3, 2023.  ECF No. 11.  The Court granted

8    Clements's request to extend his deadline to file a response to T-Mobile's motion to dismiss.  ECF

9    No. 16.  However, Clements failed to file a response by the extended March 25, 2023, deadline.

10   Instead, two days after his deadline had passed, Clements filed a motion for leave to file a first

11   amended complaint, seeking to change his original petition to enforce arbitration into a complaint

12   for damages.  Pl.'s Mot. for Leave to File Am. Compl. ("Mot. for Leave"), ECF No. 23.  Despite

13   his failure to comply with the Court's briefing schedule order, the Court exercised leniency and

14   granted Clements's motion for leave to file a first amended complaint on May 17, 2023.  *See*

15   Order Granting Mot. for Leave to File Am. Compl.  Notably, Clements also failed to timely file

16   his FAC in accordance with the Local Rules, but the Court again exercised leniency and accepted

17   Clements's filing.  *Id.*

18       Clements amended and recast his original petition, this time challenging the formation of

19   the arbitration agreement and contending that the Arbitration Agreement contains material

20   ambiguities resulting in a lack of mutual assent.  FAC ¶¶ 101–07.  Clements also contends that the

21   Arbitration Agreement is rescinded based on T-Mobile's material breach or repudiation.  *Id.* ¶¶

22   108–16.

23       At the time of Clements's activation and purchase, T-Mobile's June 2, 2019, Terms and

24   Conditions ("2019 Terms and Conditions") were in effect.  The 2019 Terms and Conditions

25   included an Arbitration Agreement providing in part that "any and all claims or disputes in any

26   way related to or concerning the agreement, our privacy notice, our services, devices or products .

27   . . will be resolved by binding arbitration or in small claims court."  Pet., Ex. 1, ECF No. 1-1.  The

28   Case No.: 5:22-cv-07512-EJD
     ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DISMISS
                                          2

United States District Court
Northern District of California

1    Arbitration Agreement stated that customers may choose to opt out of the mandatory arbitration

2    procedures within thirty days from the date of purchase or activation.  *Id.*  T-Mobile updated its

3    Terms and Conditions on March 1, 2021 ("2021 Terms and Conditions").  The 2021 Terms and

4    Conditions contained the same arbitration clause language quoted above, while adding a

5    governing law provision stating that the "[a]greement is governed by the Federal Arbitration Act,

6    applicable federal law, and the laws of the state or jurisdiction in which your billing address in our

7    records is located, without regard to the conflicts of laws rules of that state or jurisdiction."

8    Declaration of Christopher Muzio ("Muzio Decl."), Ex. C, at 29, ECF No. 37-2.  T-Mobile

9    informed all primary account holders of the new 2021 Terms and Conditions view email, text, and

10   billing statements, which stated that customers will have agreed to the updated terms by using the

11   service after the effective date.  Muzio Decl. ¶¶ 8–9.

12          Clements's FAC essentially alleges that the Parties never formed a contract in 2019 due to

13   lack of mutual assent to the Terms and Conditions because the 2019 version does not specify

14   whether the Terms and Conditions or the AAA Rules control when there is a conflict—unlike the

15   current version of the Terms and Conditions, which provides that T-Mobile's terms control when

16   there is a conflict with the AAA Rules.

17          T-Mobile filed the present motion to compel arbitration and dismiss in response to

18   Clements's FAC on June 5, 2023.  *See* Mot.  Clements was originally required to file a response

19   by June 19, 2023.  ECF No. 37.  Clements failed to file an opposition by June 19, 2023.

20          After Clements's deadline had passed, on June 23, 2023, the Parties filed, and the Court

21   granted, a stipulation extending the filing deadlines.  ECF No. 39.  Clements's new deadline to file

22   a response was July 20, 2023.  *Id.*  Clements failed to file an opposition by July 20, 2023.

23          After Clements's extended deadline had passed, on July 29, 2023, the Parties filed, and the

24   Court later granted, a second stipulation to extend the briefing schedule.  ECF No. 41.  Clements's

25   deadline to file an opposition was most recently set for November 15, 2023.  *Id.*  Clements failed

26   to file a response by November 15, 2023, or properly seek an extension to his filing deadline.

27          On December 11, 2023, the Court took the unopposed motion under submission.  ECF No.

28   Case No.: 5:22-cv-07512-EJD

1    43.

2    **II.     LEGAL STANDARD**

3           The Parties do not dispute that the Federal Arbitration Act ("FAA") governs the

4    Arbitration Agreement here.  The FAA declares "that a written agreement to arbitrate . . . 'shall be

5    valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

6    revocation of any contract,'" and thereby establishes a "liberal federal policy favoring arbitration."

7    *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (quoting 9 U.S.C. §

8    2).  Where parties enter into an arbitration agreement, the FAA "leaves no place for the exercise of

9    discretion by a district court, but instead mandates that district courts shall direct the parties to

10   proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean*

11   *Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  Any doubts must be resolved in favor of

12   arbitration.  *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003).  In determining whether

13   to compel a party to arbitrate, the court must determine: "(1) whether a valid agreement to

14   arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."

15   *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (internal quotation marks

16   and citation omitted).  If both are answered in the affirmative, the court must compel arbitration.  9

17   U.S.C. §§ 2–4.

18   **III.    DISCUSSION**

19          **A.     Request for Judicial Notice**

20          As an initial matter, T-Mobile requests that the Court take judicial notice of the 2019 and

21   2021 Terms and Services agreements, as well as notices from T-Mobile regarding both

22   agreements.  Request for Judicial Notice, ECF No. 37-3.  Clements has not opposed this request.

23          A court may take judicial notice of facts that are not subject to reasonable dispute because

24   they are either "(1) generally known within the territorial jurisdiction of the trial court or (2)

25   capable of accurate and ready determination by resort to sources whose accuracy cannot

26   reasonably be questioned."  Fed. R. Evid. 201(b).  The court may also utilize the "incorporation by

27   reference" doctrine in motions to dismiss to consider "documents whose contents are alleged in a

28   Case No.: 5:22-cv-07512-EJD

United States District Court
Northern District of California

United States District Court
Northern District of California

1   complaint and whose authenticity no party questions, but which are not physically attached to

2   [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotation

3   marks omitted).

4         Here, the FAC centers around Clements's contractual relationship with T-Mobile under the

5   2019 and 2021 Terms and Conditions.  Clements also directly cites to both the 2019 and 2021

6   Terms and Conditions in his original petition to compel arbitration and motion for leave to file the

7   first amended complaint.  As such, the authenticity of the agreements and notices regarding the

8   agreements cannot reasonably be questioned.  Therefore, the Court **GRANTS** T-Mobile's request

9   for judicial notice.

10        **B.      Failure to Prosecute or Comply with Court Orders**

11        To begin, the lack of any written opposition raises the issue of whether this action should

12   be dismissed for failure to prosecute or comply with a court order under Federal Rule of Civil

13   Procedure 41(b).  Fed. R. Civ. P. 41(b); *see Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir.

14   1992).

15        A failure to file an opposition to a motion to dismiss as required by a district court's local

16   rules can constitute grounds for dismissal under Rule 41(b).  *See Espinosa v. Washington Mut.*

17   *Bank*, No. C 10-04464 SBA, 2011 WL 334209, at *1 (N.D. Cal. Jan. 31, 2011); *see also Ghazali*

18   *v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) ("Failure to follow a district court's local rules is a proper

19   ground for dismissal.").  "In determining whether to dismiss a claim for failure to prosecute or

20   failure to comply with a court order, the Court must weigh the following factors: (1) the public's

21   interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the

22   risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5)

23   the public policy favoring disposition of cases on their merits." *Pagtalunan v. Galaza*, 291 F.3d

24   639, 642 (9th Cir. 2002).

25        Having carefully considered the relevant factors, the Court concludes that they favor the

26   dismissal of the action.

27        As to the first factor, "[t]he public's interest in expeditious resolution of litigation always

28   Case No.: 5:22-cv-07512-EJD
    ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DISMISS

favors dismissal." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) (holding that the plaintiff's failure to comply with a minute order setting forth the deadline to file the amended complaint gave the district court the discretion to dismiss the case under Fed. R. Civ. P. 41(b)), *superseded by statute on other grounds as recognized in Martinez v. Bruce P.*, Case No.: 1:22-cv-01134 JLT-SKO, 2023 WL 5488343, at *1 (E.D. Cal. Aug. 24, 2023).

The second factor also tips the balance in favor of dismissal. The Court must be able to manage its docket "without being subject to routine noncompliance of litigants." *Pagtalunan*, 291 F.3d at 642; *see also Ferdik*, 963 F.2d at 1261 (noting that a litigant's non-compliance with rules and orders diverts "valuable time that [the court] could have devoted to other major and serious criminal and civil cases on its docket"). Here, Clements has repeatedly failed to comply with the Court's orders or Local Rules.

First, Clements missed his extended deadline to file a response to T-Mobile's first motion to dismiss the original petition. *See* ECF No. 16. Regardless, the Court exercised leniency in allowing Clements to file an amended complaint. *See* Order Granting Mot. for Leave to File Am. Compl.

Second, Clements's FAC filing was untimely. *Id.* at 34. The Court again exercised leniency for this error in its Order granting Clements's request to amend. *Id.* ("Although Clements did not file his amended complaint until March 31, 2023 (ECF No. 25) as a separate exhibit . . . . [i]n the interests of justice, and because Clements has not previously sought leave to amend and there is no evidence of bad faith, the Court will accept Clements's untimely filing.").

Third, Clements missed his deadline to file an opposition to the present motion on three separate occasions. *See* ECF Nos. 37 (response due 6/19/2023), 39 (response due 7/20/2023), 41 (response due 11/15/2023). The Court again exercised leniency in granting stipulations to extend the filing deadlines—after the deadline had already passed—on two of those occasions. ECF Nos. 39, 41.

Third, Clements arbitrarily filed a document titled "Case Management Statement" with no case management hearing scheduled and no motion to schedule a case management conference.

1    ECF No. 42. Clements's "Case Management Statement" was not a properly noticed motion filed

2    in compliance with the Local Rules and therefore did not trigger a briefing schedule that would

3    have allowed T-Mobile the opportunity to respond. *See* N.D. Cal. Local Rule 7-11. As such,

4    Clements was not entitled to a response from the Court for this "Case Management Statement,"

5    therefore the Court did not address the erroneous filing.[1]

6        Finally, instead of filing a timely opposition to this motion, Clements instead filed a

7    "Notice" shortly after the Court took the matter under submission. ECF No. 44. This "Notice"

8    did not request any specific form of relief from the Court, but rather suggested that Clements

9    failed to file a timely opposition because the Court had not addressed his improper "Case

10   Management Statement" filing, and the parties were engaged in a discovery dispute. *Id.* While

11   the Court may give leeway to pro se parties in similar instances, Clements presents himself as an

12   attorney licensed in both California and Texas, and therefore the Court holds Clements to the same

13   standards as other attorneys who appear before it.

14       Similarly, the third factor weighs strongly in favor of dismissal. Clements has offered no

15   valid justification for his failure to file an opposition to this motion. Clements's "Notice"

16   discussing discovery disputes was wholly devoid of any circumstances that would have prevented

17   him from filing an opposition in this motion to dismiss, or alternatively filing a request to extend

18   his deadline to file a response. Thus, the Court can discern no unique instances of prejudice to

19

20   [1] Pursuant to Local Rule 16-10(c), the Court may schedule subsequent case management
conferences during the pendency of an action either sua sponte or in response to a stipulated

21   request or motion. Pursuant to Rule 7-11, motions for administrative relief, including requests to
schedule a case management conference, must follow the requirements of Rule 7-11, i.e., the party

22   must file a properly noticed motion and proposed order. Other parties have the opportunity to file
any opposition to or support for the motion for administrative relief no later than four days after

23   the motion has been filed. L.R. 7-11(b). A motion for administrative relief is deemed submitted
for immediate determination without hearing on the day after the opposition is due. *Id.* at 7-11(c).

24   Here, Clements did not file a stipulated request for a case management conference or a motion
pursuant to Rule 7-11. Instead, Clements filed a document labeled "Case Management

25   Statement," in which he requested that the Court set a case management conference and indicated
that the parties were engaged in a discovery dispute. This is an improper filing under the Local

26   Rules. Case management statements are intended to be filed in advanced of an already scheduled
case management conference, not as a means to schedule a case management conference. L.R.

27   16-9(a).

28   Case No.: 5:22-cv-07512-EJD
     ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DISMISS
     7

1  Clements outside of the dismissal of this case.  *See Espinosa*, 2011 WL 334209, at *2.

2          As to the fourth factor, the Court has considered whether to issue an order to show cause

3  prior to dismissal.  However, considering that Clements has demonstrated a pattern of non-

4  compliance, and the Court has already exercised repeated leniency regarding Clements's filing

5  deadlines, the Court finds it unnecessary and inequitable to permit Clements another opportunity

6  to comply.

7          For the fifth factor, though the public policy favoring disposition of cases on their merits

8  often weighs against dismissal, it is overridden here by the cumulative weight of the preceding

9  four factors.  *See Pagtalunan*, 291 F.3d at 643 (affirming dismissal of action where three of the

10  five factors weighed in favor of that result).  Further, Clements had already filed an arbitration

11  action in Texas raising these same claims prior to initiating this action, thus the dismissal of this

12  action will not impact his ability to proceed on the merits in arbitration.  Pet., Ex. at ECF 1-11.

13          Therefore, the Court **GRANTS** T-Mobile's motion for his failure to prosecute this case or

14  comply with court orders.

15          **C.      Motion to Compel Arbitration**

16          However, even if the Court did not find dismissal warranted under Federal Rule of Civil

17  Procedure 41(b), the Court also dismisses because Clements is required to arbitrate his claims.[2]

18                  **1.      Valid Agreement to Arbitrate**

19          While Clements made no arguments in response to this motion to dismiss, in his motion

20  for leave to amend, he argued that his amended complaint alleges facts that he did not mutually

21  assent to the 2019 Terms and Conditions which he contends are ambiguous, therefore the

22  arbitration provision is invalid.  *See* Mot. for Leave.  In his FAC, Clements alleges that the 2019

23  Terms and Conditions are ambiguous because it lacks a provision to guide conflicts between the

24

25  _____

26  [2] To the extent that Clements claims no mutual assent or alteration of material terms not assented
    to such that the arbitration agreement never existed, this is a matter for the Court to decide.
27  Indeed, "a court must resolve any challenge that an agreement to arbitrate was never formed, even
    in the presence of a delegation clause."  *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021,
    1030 (9th Cir. 2022).

28

Terms and Conditions and the AAA Rules.  FAC ¶¶ 100–07.  While the 2021 Terms and Conditions state that the Terms and Conditions would control in the event of conflict between the Terms and Conditions and the AAA Rules, the 2019 Terms and Conditions—which Clements alleges is the controlling version of the Terms and Conditions[3]—did not contain any language regarding which of the two controls when there is conflict.  Clements alleges that this ambiguity made it impossible for a consumer to know what they were agreeing to regarding those areas of conflict at the time they signed the contract.  *Id.*

When assessing whether an arbitration agreement is enforceable, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied . . . without contravening [the FAA]."  *Heredia v. Sunrise Senior Living LLC*, No. 18-cv-00616-HSG, 2018 WL 5734617, at *2 (N.D. Cal. Oct. 31, 2018) (internal quotation marks omitted) (quoting *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  Thus, the "state-law principles that govern the formation of contracts" apply to this analysis.  *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010); *see also Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) (stating that district courts apply "ordinary state-law principles that govern the formation of contracts' in analyzing arbitration agreements).

"Under California law, mutual assent is a required element of contract formation." *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).  "Mutual assent requires, at a minimum, that the party relying on the contractual provision establish that the other party had notice and gave some indication of assent to the contract."  *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023).  Mutual assent may be manifested in several ways—in writing, through speech or by conduct—and "may be implied through action or inaction."  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).  However, "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious."

---

[3] The Court does not reach a conclusion regarding which Terms and Conditions control the dispute.  That issue must be properly raised before the arbitrator.

1     *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (Cal. Ct. App. 1972).

2     "This principle of knowing consent applies with particular force to provisions for arbitration." *Id.*

3     "If a party wishes to bind in writing another to an agreement to arbitrate future disputes, such

4     purpose should be accomplished in a way that each party to the arrangement will fully and clearly

5     comprehend that the agreement to arbitrate exists and binds the parties thereto." *Com. Factors*

6     *Corp. v. Kurtzman Bros.*, 131 Cal.App.2d 133, 136 (Cal. Ct. App. 1955) (internal quotation marks

7     and citation omitted).

8         Here, it is clear that Clements expressed a mutual assent to arbitrate.  He signed the 2019

9     Terms and Services, which stated in clear and bold language that any and all disputes related to the

10    agreement, privacy notice, services, devices, or products are subject to arbitration.  *See* Pet., Ex. 1.

11    Clements does not allege that he was unaware of the Arbitration Agreement or unaware that it

12    bound him to arbitration.  Clements also does not allege that the Arbitration Agreement was

13    procedurally or substantively unconscionable.  Indeed, Clements declined to opt-out of the

14    Arbitration Agreement in the 2019 Terms and Services, continued services after receiving the

15    revised 2021 Terms and Services, and initiated his own arbitration against T-Mobile in Texas.

16    The 2019 Terms and Services' failure to contain language regarding which law controls when

17    there is a conflict in arbitrating the underlying claims does not change the fact that Clements fully

18    and clearly comprehended that the agreement to arbitrate existed and bound the parties.  *See*

19    *Knutson*, 771 F.3d at 566 (quoting *Factors Corp.*, 131 Cal. App. 2d at 136).  Any dispute

20    regarding which law controls the claims underlying the arbitration action is properly decided by

21    the arbitrator.

22                **2.**      **Claims Within the Scope of the Arbitration Agreement**

23         Clements's FAC does not allege that his claims fall outside the scope of the Arbitration

24    Agreement.  Regardless, upon review of the Arbitration Agreement, the Court finds that

25    Clements's claims fall squarely within the scope of the Arbitration Agreement.  The Arbitration

26    Agreement is broad, encompassing all disputes with T-Mobile "in any way related to or

27    concerning" the Arbitration Agreement with T-Mobile, devices or services provided by T-Mobile,

28    Case No.: 5:22-cv-07512-EJD

*Left margin:* United States District Court / Northern District of California

or T-Mobile's privacy policy.  Pet., Ex. 1, ECF No. 1-1.  All of Clements's claims in his FAC hinge on T-Mobile's alleged failure to implement reasonable measures to protect the data that Clements provided in connection with the contract with T-Mobile and therefore fall within the scope of the Arbitration Agreement.

### D.    Recission

The Court will also briefly note Clements's allegation that T-Mobile rescinded the entire Arbitration Agreement by participating in a class action settlement in the Federal District Court for the Western District of Missouri.  FAC ¶¶ 108–16.  Clements alleges that by participating in this Missouri class action settlement, T-Mobile breached the class action waiver in Clements's Arbitration Agreement, thereby rescinding the entire Arbitration Agreement.  *Id.* ¶ 111.  Clements does not allege to be a class member or allege any of the underlying facts of the Western District of Missouri action.  Clements has failed to show how T-Mobile's class action litigation with parties who are not a member to the contract between Clements and T-Mobile bears any relevance to this matter.  Thus, the Court declines Clements's invitation to invalidate the Arbitration Agreement on this ground.

\* \* \*

Therefore, the Court finds that the Arbitration Agreement is valid and encompasses the claims at issue and **GRANTS** T-Mobile's motion to compel arbitration.

## IV.    CONCLUSION

For the foregoing reasons, T-Mobile's motion to compel arbitration and dismiss this action is **GRANTED**.

**IT IS SO ORDERED.**

Dated: January 19, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 5:22-cv-07512-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DISMISS
11

United States District Court
Northern District of California